UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
CURTIS ALLEN MOORE, JR.,        )
                                )
        Petitioner,             )
                                )
                                )
        v.                      )    Criminal Action No. 01-238 (RWR)
                                )    Related to: Civil Action No.
                                )      03-1320 (RWR)
UNITED STATES,                  )
                                )
        Respondent.             )
_____)


<u>MEMORANDUM OPINION AND ORDER</u>

        Petitioner Curtis Allen Moore, Jr., filed a motion to vacate

his sentence under 28 U.S.C. § 2255 or, in the alternative, to

conduct an evidentiary hearing, arguing that his counsel provided

ineffective assistance, the court misunderstood its discretion to

depart from the criminal history category calculation, and the

sentencing was unconstitutional in light of <u>United States v.

Booker</u>, 543 U.S. 220 (2005).  The government opposes Moore's

motion to vacate his sentence, but requests an evidentiary

hearing on whether Moore's attorney failed to appeal when

requested.  Moore has failed to substantiate most of his claims,

and they warrant no hearing or relief.  However, because Moore

has alleged facts that may entitle him to relief on the issue of

whether his attorney failed to file an appeal despite Moore's

requests, Moore is entitled to an evidentiary hearing on that

issue.  In addition, because the court materially misperceived

its sentencing discretion, Moore's sentence will be vacated and he will be resentenced.

## BACKGROUND

Moore sold cocaine base ("crack") to undercover police officers on four occasions before his arrest. (Presentence Investigation Report ("PSR") ¶¶ 6-9.) Law enforcement agents also searched Moore's residence and vehicle and recovered additional crack, a loaded revolver, and drug paraphernalia. (Id. ¶¶ 11, 12, 14.) The weight of all of the crack totaled 267.3 grams. (Id. ¶ 15.) Moore was indicted on five counts. The first three counts each charged unlawful distribution of five grams or more of cocaine base. Count 4 charged unlawful distribution of 50 grams or more of cocaine base, and Count 5 charged unlawful distribution of 50 grams or more of cocaine base within 1000 feet of Takoma[1] Elementary School.

Moore entered a plea agreement with the government. (Gov't Opp'n at 3.) In the plea agreement, Moore agreed to plead guilty to Count 5, acknowledged that he would be treated as a career offender with an enhanced offense level of 37 and a criminal history category of VI under the U.S. Sentencing Guidelines, and agreed not to seek any downward departures from the guidelines. (Pet'r Mem. in Support of § 2255 ("Pet'r Mem."), Ex. 10 ("Plea Agreement") ¶¶ 1, 3, 22.) The government agreed to dismiss the

---

[1] The government's charging papers misspelled the name of the school as "Tacoma."

remaining four counts, to file a downward departure motion under § 5K1.1 of the sentencing guidelines if Moore provided substantial assistance in investigating or prosecuting other offenders, to not file papers that would double Count 5's mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A), to not file any charges pertaining to the recovered firearm, and to consent to a three-level reduction of Moore's offense level for pleading guilty. (Id. ¶¶ 15, 16, 19, 22.) Moore pled guilty to Count 5 at a plea hearing in which the court conducted an extensive colloquy as required by Rule 11 of the Federal Rules of Criminal Procedure. The court found Moore's guilty plea voluntary and accepted the plea. (Pet'r Mem., Ex. 2 ("Plea Hrg. Tr.") at 31.) Moore was detained pending sentencing.

The PSR did classify Moore as a career offender under the sentencing guidelines. (PSR ¶ 27.) That resulted in a total offense level of 34 after a three-point reduction for pleading guilty and a criminal history category of VI, yielding a sentencing guidelines range of 262 to 327 months in prison. (Id. ¶¶ 27-28, 36, 59.) The government did not file a motion to depart under § 5K1.1 because the petitioner, while not at fault, did not provide substantial assistance. (Pet'r Mem., Ex. 1 ("Sent. Tr.") at 8.) Moore was sentenced in 2002 to 262 months of imprisonment. (Id. at 23.) Moore claims that after sentencing, he instructed his attorney, William Gregory Spencer, to file an appeal immediately and that his mother also made this

request at a later meeting. (Pet'r Grounds & Supporting Facts
for § 2255 Habeas Review ("Pet'r Grounds") at 1.) However,
Spencer denies that Moore asked him to appeal. (Gov't Opp'n at
15.) Spencer says he did later speak with Moore's mother,
advised her that there was no appealable issue, and said that
Moore should contact Spencer if Moore wanted to appeal. (Id.)
Spencer reports he did not receive any further contact from Moore
and did not file an appeal. (Id.)

Moore asserts that Spencer was ineffective for failing to
request or alert the court to certain downward departures at
sentencing; for advising Moore to plead guilty while
misrepresenting the quantity of the drug evidence and despite
Moore's exculpatory claims, resulting in a plea that was not
knowing and voluntary; for failing to claim that the government
violated the plea agreement by not filing a substantial
assistance motion under § 5K1.1; and for failing to file a timely
notice of appeal. (Pet'r Grounds at 1-3, 5-17.) Additionally,
Moore argues that the court committed error by not recognizing
its own discretion to depart downward from his criminal history
category (id. at 3-4), and that his sentence was unconstitutional
following Booker.[2] (Pet'r Mem. in Support of Mot. for Leave to
Amend § 2255 Mot. at 2.) The government consents to a hearing on

---

[2] This broadly summarizes Moore's first § 2255 motion, which
contained ten grounds for relief, and his later motion for leave
to amend his first § 2255 motion, which contained four additional
grounds.

whether Spencer failed to appeal, but opposes the remainder of Moore's motion to vacate his sentence by asserting that his plea was knowing and voluntary, that Spencer was not ineffective, and that Moore failed to show any prejudice from Spencer's alleged errors.[3] (Gov't Opp'n at 3, 14, 16-17.)

## DISCUSSION

In a § 2255 motion, the petitioner can move the sentencing court to "vacate, set aside, or correct the sentence" if the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law. . . ." 28 U.S.C. § 2255(a). The petitioner bears the burden by a preponderance of the evidence. United States v. Pollard, 602 F. Supp. 2d 165, 168 (D.D.C. 2009). An evidentiary hearing need not be held when the "motion and the files and the records of the case conclusively show the prisoner is entitled to no relief." United States v. Horne, No. 99-3080, 2000 WL 60246, at *2 (D.C. Cir. Jan. 4, 2000) (per curiam) (noting that it is within the court's discretion whether to hold a hearing when it is the same court that presided over the petitioner's criminal proceedings) (internal quotation marks omitted).

---

[3] The government did not file an opposition to Moore's motion for leave to amend his § 2255 motion.

I.   INEFFECTIVE ASSISTANCE OF COUNSEL

     In order to prove ineffective assistance of counsel, Moore
must show (1) that counsel's representation fell below an
objective standard of reasonableness, and (2) that there is a
reasonable probability that, but for counsel's errors, the result
of the proceeding would have been different.  Strickland v.
Washington, 466 U.S. 668, 687-88, 694 (1984).  Counsel's
performance is evaluated on the basis of how counsel would have
viewed it at the time without the benefit of hindsight.  Id.
at 689.  To satisfy the first prong, the petitioner must show
that counsel did not provide reasonable service under the
"prevailing professional norms" given the circumstances.  Id.
at 688.  Courts will look to "an attorney's ethical duties,
including those which require counsel to bring skill and
knowledge to the case and to provide zealous representation."
Best v. Drew, Civil Action No. 01-262 (RWR), 2006 WL 2035652, at
*3 (D.D.C. July 18, 2006).

     As for the second prong, a reasonable probability is a
"probability sufficient to undermine confidence in the outcome."
Strickland, 466 U.S. at 694.  The two-part Strickland test also
applies where a petitioner has pled guilty.  Hill v. Lockhart,
474 U.S. 52, 58 (1985).  To satisfy the prejudice requirement, a
petitioner who has pled guilty "must show that there is a
reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to

trial." Id. at 59; see also Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012) (affirming that the Hill standard continues to govern "cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial"). When the evidence supports a petitioner's assertion that he would not have accepted the plea agreement, but for counsel's erroneous advice, a petitioner has been prejudiced. See United States v. Streater, 70 F.3d 1314, 1322-23 (D.C. Cir. 1995) (stating that the defendant's affidavit asserting his innocence and intention to argue a defense, his rejection of plea offers until counsel's error, and the judge's sending for a jury panel support an intent to proceed to trial). To satisfy the required showing of prejudice, a "defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial[.]'" United States v. Horne, 987 F.2d 833, 836 (D.C. Cir. 1993) (quoting Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986)); see also United States v. Tolson, 372 F. Supp. 2d 1, 19 (D.D.C. 2005) (stating that the Strickland test requires not "some" probability, but "reasonable" probability, a threshold that bare allegations fail to satisfy). The prejudice inquiry determination is "closely related to the objective prediction of whether the defense could succeed if the case went to trial." United States v. Del Rosario, 902 F.2d 55, 58 (D.C. Cir. 1990), abrogated on other grounds by Padilla v. Kentucky, 130 S. Ct. 1473, 1480-81 (2010) (noting that whether there is a colorable

claim of innocence is relevant to determining a motion to vacate a plea due to ineffective assistance of counsel).  A petitioner's representations "at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea . . . may 'constitute a formidable barrier' to his later refutations." United States v. Taylor, 139 F.3d 924, 933 (D.C. Cir. 1998) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)).

   A.   Plea not knowing and voluntary

   Moore contends that Spencer advised him to plead guilty after Spencer mischaracterized the government's evidence and even after Moore asserted exculpatory facts.  Specifically, Moore asserts that Spencer misstated the weight of the drugs recovered as 50.1 grams when the lab report indicated a weight of 48.2 grams.  (Pet'r Grounds at 10-11.)[4]  In addition, Spencer allegedly advised Moore to plead guilty despite Moore's contentions that the transaction occurred beyond 1000 feet of a school (id. at 6-7), and that he was not in possession of crack, but another form of cocaine base that does not carry an enhanced sentence (id. at 12).  Moore claims therefore that the plea was not knowing and voluntary.

   Moore's plea hearing began with a request that Moore let the court know if at any time Moore did not understand what was

_____

   [4] The Drug Enforcement Administration drug analysis report reflected a net weight of the drugs submitted for analysis as 50.1 grams, and the reserve weight of the drugs after a sample was tested as 48.2 grams.  (Pet'r Mem., Ex. 9.)

happening or what was being explained. Moore promised to do so. (Plea Hrg. Tr. at 4-5, 8.)[5] Moore confirmed that he had taken no substances or medicine in the prior 48 hours that could affect his ability to understand (id. at 5); that he understood the charge against him and had fully discussed it and the case in general with his lawyer (id. at 6); that he had had enough time to discuss with his lawyer whether to accept the government's plea offer and was completely satisfied with the services of his lawyer (id. at 6-7); that he understood that by pleading guilty, he would give up his right to a jury trial, all the rights attending a jury trial, and most of his rights to appeal (id. at 11); that he understood that his sentence could be much higher than the 262-month term his lawyer estimated under the sentencing guidelines (id. at 19-20); and that he was pleading guilty because he was guilty and was doing so voluntarily (id. at 30). In entering his guilty plea to Count 5, Moore admitted under oath that he made a sale of more than 50 grams of what he knew to be crack cocaine withing 1000 feet of a school. (Id. at 4, 27-28.)

Moore's own sworn admissions at his guilty plea pose a "formidable barrier" for him to overcome. Taylor, 139 F.3d at 933.[6] He provides no objective evidence reflecting any deficient

_____

[5] He kept his promise, as he did more than once seek clarification (see Plea Hrg. Tr. at 7:14-19; 18:7-11; 21:11-14; 29:4-8), and receive it.

[6] In addition, in light of the Supreme Court's recent decision in DePierre v. United States, 131 S. Ct. 2225 (2011), Moore's contention that he possessed not crack but another form

conduct by Spencer that rendered the guilty plea not knowing and
voluntary.  Furthermore, the petitioner fails to show objective
evidence that he would have pled differently at the time and gone
to trial.  Several factors render compelling Spencer's advice for
Moore to plead guilty and avoid trial.  The direct evidence that
the government could have introduced against Moore at trial
included eyewitness testimony from law enforcement agents who
made or saw four purchases of crack cocaine from Moore; the 267.3
grams of crack cocaine obtained from Moore, his vehicle, and his
residence; video and audio tapes of the undercover transactions;
and a firearm and drug paraphernalia including two scales, a
cutter, and ziplock bags recovered in the searches.  The
government would have indicted Moore under 18 U.S.C. § 922(g) for
possession of a firearm by a convicted felon, and under 18 U.S.C.
§ 924(c) for possession of a firearm during and in relation to
the commission of a drug trafficking crime (Plea Agreement ¶ 16),
which carries a mandatory consecutive minimum five-year sentence.
Moore would have been subject to double the five-year mandatory
minimum terms of imprisonment on Counts 1 through 3, and double
the ten-year mandatory minimum terms of imprisonment on Counts 4
and 5, due to two qualifying prior felony convictions.  See 21

---

of cocaine base, even if proven, would not affect Moore's
sentence.  DePierre held that "the term 'cocaine base' as used in
§ 841(b)(1) means not just 'crack cocaine,' but cocaine in its
chemically basic form."  Id. at 2237.  Congress thus was found to
have intended enhanced penalties to apply to offenses involving
forms of cocaine base other than crack.

U.S.C. §§ 841(b)(1)(A) and (B), 851, 860(a).  By going to trial,
Moore would have jeopardized his chances to earn a 3-point
offense level reduction at sentencing for accepting
responsibility, and a substantial assistance downward departure
under § 5K1.1.

Additionally, it is unlikely that Moore would have gone to
trial even if the government had been unable to prove that the
crack cocaine weighed at least 50 grams, as charged in Counts 4
and 5, or that distribution occurred within 1000 feet of a
school, as charged in Count 5.  Conviction on any of the five
counts still would have been sufficient to trigger the
application of the career offender provision, raising his offense
level and criminal history.  Moore still faced three counts of
unlawful distribution of five grams or more of cocaine base,
which he concedes that he committed.[7]  (Pet'r Grounds at 9.)  If
convicted at trial of violating 18 U.S.C. §§ 841(a)(1) and
841(b)(1)(B)(iii) -- the offense charged in Counts 1 through 3 --
Moore likely would have had a total offense level of 37 with no
three-point reduction for pleading guilty, and a criminal history
category of VI due to his status as a career offender.[8]  U.S.

---

[7] Unlike his approach to Count 5, Moore did not discuss the
issue of whether the drugs he distributed relating to Counts 1
through 3 were crack or some other form of cocaine base.
However, Moore admitted that he "was predisposed to commit the
lesser offense of distribution, because he had already done so
three previous times."  (Pet'r Grounds at 9.)

[8] Moore was a career offender because he was at least 18
years old at the time of the offenses charged in the indictment,

Sentencing Guidelines Manual § 4B1.1 (2001). An offense level of
37 and a criminal history category of VI results in a guideline
range of 360 months to life imprisonment, which is a
substantially higher guideline range than Moore was subject to by
pleading guilty with the possibility of a § 5K1.1 downward
departure. These factors do not establish an objective,
reasonable probability that Moore, but for counsel's alleged
errors, would have not pleaded guilty.

B.  <u>Failure to seek downward departures</u>

Moore argues that Spencer was ineffective by not seeking
downward departures on three bases: (1) criminal history category
VI overstated Moore's criminal history, <u>see</u> <u>United States v.</u>
<u>Johnson</u>, 98 F. App'x 5, 7 (D.C. Cir. 2004) (referring to the
<u>Strickland</u> test to evaluate whether counsel was deficient in not
seeking a downward departure from the defendant's classification
as a career criminal); (2) the drug transaction did not occur

---

those offenses are felonies involving a controlled substance, and
he had at least two prior felony convictions involving a crime of
violence or a controlled substance offense. U.S. Sentencing
Guidelines Manual § 4B1.1 (2001). Moore's past convictions were
for possession and distribution of cocaine, armed robbery (while
on parole for the cocaine convictions), and assault with intent
to kill. (PSR ¶¶ 31, 32.) The career offender guideline
enhanced Moore's offense level due to the maximum prison terms he
faced. Under § 841(b)(1)(B)(iii), "if any person commits such a
violation after a prior conviction for a felony drug offense has
become final, such person shall be sentenced to a term of
imprisonment which may not be less than 10 years and not more
than life imprisonment." 18 U.S.C. § 841(b)(1)(B)(iii). Moore
has a prior conviction for a felony drug offense. (PSR ¶ 31.)
With a statutory maximum of life imprisonment, Moore's offense
level is raised to 37 under the career offender provision. U.S.
Sentencing Guidelines Manual § 4B1.1 (2001).

within 1000 feet of a school; and (3) the government engaged in "sentence factor manipulation," or entrapment.

A downward departure request by Spencer would have violated the plea agreement and jeopardized the benefits in it that Moore bargained for. Moore agreed in his plea agreement that the career offender provisions would apply and that he would not "seek a downward departure for any reason from the otherwise applicable guideline range established by the Sentencing Guidelines." (Plea Agreement ¶¶ 3, 22.) He also agreed under oath at his plea hearing that he sold crack within 1000 feet of the Takoma Elementary School. Spencer's failure to request a downward departure was not deficient and did not prejudice Moore when the plea agreement limited such requests. See United States v. Calderon, 163 F.3d 644, 646 (D.C. Cir. 1999) (finding the defendant's claim was barred because she had "agreed as part of a valid plea bargain not to seek any other downward adjustments to her sentence"); Douglas v. United States, 306 F. Supp. 2d 16, 18 n.1 (D.D.C. 2004) (noting that the defendant's express waiver in his plea agreement of his right to request a downward departure could be a basis for denying his post-sentencing motion for a departure); United States v. Eli, 227 F. Supp. 2d 90, 96 (D.D.C. 2002), aff'd, 379 F.3d 1016 (D.C. Cir. 2004) (stating that once the defendant pled guilty, the attorney's decision not to contest the drug evidence at sentencing "was not ineffective assistance

of counsel[,] but the only reasonable decision he could have reached").

Moreover, sentencing entrapment requires a showing of both inducement by law enforcement and a lack of predisposition. United States v. Law, 528 F.3d 888, 905 (D.C. Cir. 2008). The D.C. Circuit has rejected the sentencing factor manipulation or entrapment argument when its subject is the "unwary criminal" who has "readily availed himself of the opportunity to perpetrate the crime" and is not the "unwary innocent." United States v. Hinds, 329 F.3d 184, 188-89 (D.C. Cir. 2003) (stating that people "ready, willing and able to deal in drugs . . . can hardly be described as innocents" and therefore cannot argue entrapment) (internal quotation marks omitted).

Moore has not established that law enforcement entrapped him or "'orchestrated' the crime[] to occur within 1000 feet of a school." United States v. Glover, 153 F.3d 749, 756 (D.C. Cir. 1998). The attachments to Moore's petition reflect that Moore willingly met and entered the undercover officer's car, instructed the officer to drive north on Piney Branch Road, which is toward the school,[9] sold him crack cocaine, and got out nearby on Dahlia Street. (Def.'s Mem., Ex. 5(a) at 1.) Moore was not an "unwary innocent." He has conceded that he was "predisposed

---

[9] Takoma Elementary School was located at 7010 Piney Branch Road. See Verizon White Pages for Northern Virginia, January 2001-February 2002, District of Columbia Government listings, at 29.

to commit the lessor offense of distribution" as he had done three previous times. (Pet'r Grounds at 9.) Moore has not shown any evidence that he was not predisposed to commit the crime; rather, the record reflects that he "readily agreed to the drug transaction, and showed no hesitation about conducting it[.]" Glover, 153 F.3d at 757. Under Strickland, Moore cannot establish that Spencer's failure to request any downward departure was objectively unreasonable or that Moore would have received a more favorable sentence had Spencer sought one in violation of the plea agreement and exposed Moore to the risk of the additional charges and higher sentencing exposure explained above.[10] See Johnson, 98 F. App'x at 7 (stating that counsel's strategic decision not to make a risky request for a departure from the career criminal history category was not deficient).

     C.   <u>Failure to raise a bad faith claim</u>

     Moore asserts that his attorney was ineffective for not arguing that the government breached the plea agreement when it failed to file a § 5K1.1 motion. He states that his ability to cooperate was hindered by the government's bad faith.

_____

    [10] Nor was it deficient for Spencer to not raise with the court that § 4A1.3 of the sentencing guidelines allowed the court to depart downward if the career offender criminal history category significantly over-represented the seriousness of Moore's criminal history. Such an initiative posed a perilous risk of appearing to seek a downward departure in violation of the plea agreement and forfeiting the benefits the agreement provided to Moore.

A decision about whether to file a § 5K1.1 motion is committed to the discretion of the government. United States v. Motley, 587 F.3d 1153, 1159 (D.C. Cir. 2009). Courts can review the government's decision to not "'file a substantial-assistance motion and [can] grant a remedy if they find that the refusal was based on an unconstitutional motive.'" Id. (quoting Wade v. United States, 504 U.S. 181, 185-86 (1992) (stating, for example, that refusal due to race or religion would entitle the defendant to relief)). In addition, "a court may grant a remedy if it finds that the government's refusal to file a [downward departure motion] violates due process because it is 'not rationally related to any legitimate government end.'" Id. (quoting Wade, 504 U.S. at 186).

Finally, "[a] district court may . . . grant relief if the government's refusal [to file a downward departure motion] breaches its agreement to file such a motion." Id. (citing In re Sealed Case No. 97-3112, 181 F.3d 128, 142 (D.C. Cir. 1999)). When a plea agreement provides for it, the government has a contingent obligation to file a § 5K1.1 motion for substantial assistance if it finds that substantial assistance was provided. United States v. Jones, 58 F.3d 688, 691 (D.C. Cir. 1995). Fair dealing obligates the prosecutor to evaluate accurate information about the extent and nature of the defendant's cooperation. Id. at 692. If the contingency is not met, though, the government does not have an obligation to file the motion. Id. at 691.

A defendant carries the burden of proving bad faith.  The court does not need to inquire into the government's decision "'unless the defendant makes a substantial threshold showing that the government acted in bad faith,'" United States v. Shah, 263 F. Supp. 2d 10, 33 (D.D.C. 2003), aff'd, 453 F.3d 520 (D.C. Cir. 2006) (quoting United States v. Alegria, 192 F.3d 179, 187 (1st Cir. 1999)), and once that showing is made, "the defendant would at least have 'to demonstrate that he provided the degree of assistance contemplated by the agreement,'" id. at 33 n.9 (quoting United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991)); see also United States v. Burch, 156 F.3d 1315, 1327 (D.C. Cir. 1998) (stating that because the government complied with the terms of the plea agreement, the defendant's counsel could not have requested the court to compel a § 5K1.1 motion).

Moore's claim that the government acted in bad faith by removing agents from the matter in which he was cooperating and transferring him to a facility in Virginia falls short.  Moore has not shown anything in the record that imposed upon the government obligations to staff any investigation in any particular way or to house him in any particular venue.  Nor does anything in the plea agreement impose such obligations.  Moore agreed in the plea agreement that he would not be released pending sentencing and that any cooperation efforts would occur

while he was in custody. (Sent. Tr. at 7.)[11] Moore still chose
to plead guilty despite the potential difficulty in cooperating.
The government acknowledged the difficulty at sentencing but
concluded that Moore's cooperation did not rise to the level of
substantial assistance, a judgment committed to the discretion of
the government to make.

Moore has shown no unconstitutional motive, violation of due
process, or breach of the plea agreement by the government in
reaching that conclusion. The record reflects that the United
States Marshal transferred Moore due to space considerations and
that the agent was taken off the case due to events surrounding
the terrorist attacks of September 11, 2001. (Sent. Tr. at 7,
9.) The government concurred with Spencer's recitation of
Moore's limited cooperation and explained that despite Moore's
efforts, the information provided did not result in any further
investigations or could not be used. (Sent. Tr. at 17.) Moore
has not established that Spencer's failure to allege bad faith by
the government was objectively unreasonable or prejudiced Moore.

D.  <u>Failure to file notice of appeal</u>

Moore complains that he received ineffective assistance of
counsel because Spencer did not comply with Moore's request to
file an appeal. A lawyer who disregards specific instructions

---

[11] The government was unwilling to risk releasing Moore in
part because he committed the charged offenses while he was on
parole for a South Carolina robbery conviction. (Sent. Tr. at 7,
15-17.)

from the petitioner to file a notice of appeal acts in a professionally unreasonable manner. <u>United States v. Taylor</u>, 339 F.3d 973, 977 (D.C. Cir. 2003). Counsel's failure to file an appeal requested by the client "cannot be considered a strategic decision." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000). A petitioner is entitled to resentencing and to an appeal without having to show that it would likely have had merit when his counsel does not file a requested appeal. <u>See</u> <u>Pequero v. United States</u>, 526 U.S. 23, 28 (1999) (citing <u>Rodriquez v. United States</u>, 395 U.S. 327, 329-30 (1969)). If a petitioner's attorney does not comply with a request to file an appeal, the sentence will be vacated and the petitioner will be resentenced to allow him to appeal. <u>See</u> <u>United States v. Ramos</u>, 807 F. Supp. 1, 3 (D.D.C. 1992).

The court must grant a hearing under § 2255 unless "'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>United States v. Pollard</u>, 959 F.2d 1011, 1030 (D.C. Cir. 1992) (quoting 28 U.S.C. § 2255). The court has discretion to make this determination and "[o]nly where the § 2255 motion raises detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal knowledge or recollection must a hearing be held." <u>Id.</u> at 1031 (internal quotation marks omitted) (noting that "[e]ven if the files and records of the case do not clearly rebut the allegations of the prisoner, no

hearing is required where his claims are vague, conclusory, or palpably incredible").

The parties present conflicting factual accounts. Moore asserts that he immediately asked Spencer to file an appeal after his sentencing and that his mother repeated that request for Moore in a later meeting with Spencer. According to the government, Spencer discussed the issue of an appeal with Moore's mother, but was not told by Moore or his mother to file an appeal. The government concedes that a hearing should be held on this issue. (Gov't Opp'n at 15.) Moore would be entitled to relief if his version of the events were found true. Therefore, Moore is entitled to an evidentiary hearing to resolve the factual dispute.

## II. DISCRETION TO DEPART FROM CRIMINAL HISTORY CALCULATION

Moore argues that the court erred by concluding that it was bound to impose a sentence within the guideline range produced by the career offender provision of § 4B1.1. Under the sentencing guidelines in effect when Moore was sentenced, a court was authorized to depart downward where "a defendant's criminal history category significantly over-represent[ed] the seriousness of a defendant's criminal history[.]" U.S. Sentencing Guidelines Manual § 4A1.3 (2001). The Sentencing Commission did not exclude from the coverage of this authority career offenders or other offenders in criminal history category VI. United States v. Beckham, 968 F.2d 47, 54 (D.C. Cir. 1992). An appellate court

may review and remand for resentencing a case where a sentencing court was unaware that it could depart under § 4A1.3.  Id. at 53, 55; In re Sealed Case No. 98-3116, 199 F.3d 488, 490 (D.C. Cir. 1999).

Moore's plea agreement barred him from seeking any downward departure.  Spencer therefore did not raise the availability of a § 4A1.3 departure either before sentencing in a sentencing memorandum or during sentencing.  Not surprisingly, the government did not advance grounds for any downward departure, much less a departure under § 4A1.3.  Lastly, in the portion of the presentence report captioned "Factors That May Warrant Departure," the Probation Office reported that it had no information which would warrant a departure from the guidelines. See PSR ¶ 73.  Thus, the court's authority to depart under § 4A1.3 was not brought to the court's attention and indeed, the court's expressed belief that it was bound to impose a sentence within the range of 262 to 327 months (Sent. Tr. at 21-22) (stating "I am bound by it" and "my hands are tied") was mistaken.  It is equally clear from the court's expressions at sentencing that "given the circumstances of [Moore's] past," the court found the guidelines range to be "grossly excessive" (id. at 21) and had considered lowered alternatives that might have been warranted had the court not felt bound.  (Id. at 21-22.)

Thus, granting Moore resentencing relief on this ground is warranted.[12]

III. APPLICATION OF <u>BOOKER</u>

Moore sought leave to amend his § 2255 petition to challenge his sentence on the ground that it is unconstitutional under <u>Booker</u> because a sentence was imposed based on enhancements not found by a jury and that the guideline provisions are advisory.[13] <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220 (2005) (concluding that the federal sentencing guidelines were unconstitutional as mandatory and rendering them advisory). However, <u>Booker</u> does not apply retroactively to cases on collateral review. <u>In re Zambrano</u>, 433 F.3d 886, 889 (D.C. Cir. 2006). Moore was sentenced before <u>Booker</u> was decided. Because <u>Booker</u> is not applied retroactively, the then-mandatory guidelines applied to Moore and he is not entitled to <u>Booker</u> relief under § 2255. However, as Moore is otherwise entitled to resentencing as is discussed above, and "resentencing occurs under the version of

---

[12] The government in its opposition neither commented upon nor disputed Moore's claim that the court erred, thus waiving any contrary argument it may have had or any argument that Moore has defaulted this claim by not raising it at sentencing and not taking a direct appeal. <u>See</u> <u>Pollard</u>, 959 F.2d at 1018-20 (noting that the government may itself waive an argument that a defendant has waived a ground for § 2255 relief); <u>United States v. Hicks</u>, 945 F.2d 107, 108 (5th Cir. 1991) (finding where "the government ha[d] not . . . raised a procedural bar to [an issue's] consideration," it "thus waived its interest in asserting the finality of the judgment to this extent").

[13] In his motion for leave to amend his complaint, Moore also repeats some of his earlier claims.

the Guidelines in effect at the time of resentencing unless such an application would violate the *ex post facto* clause," <u>United States v. Clark</u>, 8 F.3d 839, 844 (D.C. Cir. 1993), the advisory guidelines will apply to him.

<u>CONCLUSION AND ORDER</u>

Moore failed to substantiate most of his claims regarding ineffective assistance of counsel and the application of <u>Booker</u>. However, a factual dispute exists about whether Moore asked Spencer to file an appeal, and that dispute must be resolved in a hearing. In any event, Moore is entitled to a resentencing hearing since the court misperceived its sentencing discretion. Therefore, it is hereby

ORDERED that Moore's § 2255 motion [21] be, and hereby is, GRANTED in part and DENIED in part. It is further

ORDERED that the Clerk direct the Criminal Justice Act coordinator to appoint counsel to represent Moore going forward. It is further

ORDERED that the government confer with Moore's new counsel and file a joint status report within 60 days reflecting their proposal for how the case should proceed in light of the relief awarded and reflecting three mutually agreeable dates on which to schedule further proceedings. It is further

ORDERED that the petitioner's motion [31] for leave to amend his § 2255 motion be, and hereby is, GRANTED. It is further

ORDERED that the United States Attorney promptly process all writs necessary to bring defendant Curtis Allen Moore, Jr. to the District of Columbia timely for resentencing.

SIGNED this 8th day of August, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge